IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANNE ELIZABETH HAMILTON,                 3:14-CV-01271-BR

      Plaintiff,                         OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

      Defendant.


LISA R. J. PORTER
JP Law PC
5200 S.W. Meadows Rd
Suite 150
Lake Oswego, OR 97035
(503) 245-6309

      Attorney for Plaintiff

BILLY J. WILLIAMS
Acting United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1003

1 - OPINION AND ORDER

DAVID MORADO
Regional Chief Counsel
JORDAN D. GODDARD
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2733

       Attorneys for Defendant

BROWN, Judge.

     Plaintiff Anne Elizabeth Hamilton seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

     Plaintiff filed an application for SSI on June 24, 2008, and alleged a disability onset date of January 1, 2004. Tr. 18.[1]  Her application was denied initially and on reconsideration.  At some point before October 22, 2010, an Administrative Law Judge (ALJ) held a hearing.  Tr. 18.

---

    [1] Citations to the official transcript of record filed by the Commissioner on December 31, 2014, are referred to as "Tr."

2 - OPINION AND ORDER

On October 22, 2010, the ALJ issued an opinion in which he found Plaintiff was not disabled and, therefore, was not entitled to benefits.  Tr. 18.  That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 18.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On November 29, 2010 Plaintiff filed a second application for SSI, and alleged a disability onset date of February 6, 2008.  Tr. 71.  The parties agree, however, that *res judicata* applies to "the adjudicated period of the prior ALJ decision and, therefore, the ALJ and this Court consider Plaintiff's disability only after October 22, 2010."  In addition, *res judicata* creates a rebuttable presumption of "continuing non-disability" for any period after the date of the October 22, 2010.  *See Chaves v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).  A claimant may overcome the rebuttable presumption by establishing "changed circumstances indicating a greater disability."  *Id*.  The Commissioner, therefore, considered here only whether Plaintiff established she had a greater disability after October 22, 2010, than she had suffered before that time.

Plaintiff's second application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on March 7, 2013.  Tr. 36-47.  At the hearing Plaintiff and a vocational expert (VE) testified.  Plaintiff was

represented by an attorney.

On May 17, 2013, the ALJ issued an opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 20-39. On January 28, 2014, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Tr. 1-7. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on April 18, 1979, and was 33 years old at the time of the hearing. Tr. 71. Plaintiff has a high-school education. Tr. 252. She has past relevant work experience as a body piercer, customer-service representative, carnival-ride operator, and cashier. Tr. 252.

Plaintiff alleges disability due to degenerative disc disease, stenosis, arthritis, fibromyalgia, herpes, migraines, chronic pain, depression, and anxiety. Tr. 71.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 23-27.

## STANDARDS

The initial burden of proof rests on the claimant to

establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving

ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. § 416.920.  Each step is potentially
dispositive.

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity.  20 C.F.R. § 416.920(b).  *See also Keyser v. Comm'r of
Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commis-

sioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(c).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's Residual Functional Capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 416.945(a).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the

Commissioner determines the claimant retains the RFC to perform
work she has done in the past. 20 C.F.R. § 416.920(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do other work that exists in the
national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also
Keyser*, 648 F.3d at 724. Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform. *Lockwood v.
Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2. If the Commissioner meets this burden, the claimant
is not disabled. 20 C.F.R. § 416.920(g)(1).


## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff had not engaged in
substantial gainful employment since her November 29, 2010,
application date. Tr. 20.

At Step Two the ALJ found Plaintiff has the following severe
impairments: degenerative disc disease, fibromyalgia, headaches,
depression, post-traumatic stress disorder (PTSD), and a pain
disorder. Tr. 21. The ALJ found Plaintiff's impairments of

8 - OPINION AND ORDER

liver hemangiomas, herpes, and kidney pain are not severe.
Tr. 21.

At Step Three the ALJ concluded Plaintiff's impairments or
combination of impairments do not meet or equal the criteria for
any Listed Impairment from 20 C.F.R. part 404, subpart P,
appendix 1. The ALJ found Plaintiff has the RFC to perform "less
than the full range of light work." Tr. 23. The ALJ found
Plaintiff can lift and carry 20 pounds occasionally and 10 pounds
frequently; can stand and walk for six hours in an eight-hour
work day; can sit for six hours in an eight-hour work day; and
can occasionally crawl, crouch, stoop, and climb stairs and
ramps. Tr. 23. The ALJ found Plaintiff should never climb
ladders, ropes, or scaffolds or have contact with the public.
Tr. 23. The ALJ also found "[a]ny production goals should be
assessed on a daily basis, rather than on [an] assembly-type
production goal." Tr. 23.

At Step Four the ALJ concluded Plaintiff is unable to
perform her past relevant work. Tr. 29.

At Step Five the ALJ found Plaintiff can perform jobs that
exist in significant numbers in the national economy. Tr. 29.
Accordingly, the ALJ found Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ erred when he improperly

(1) found Plaintiff is not fully credible, (2) evaluated opinions of various medical sources, (3) partially rejected lay-witness testimony, and (4) evaluated Plaintiff's RFC.

**I.  The ALJ did not err when he found Plaintiff is not fully credible.**

Plaintiff alleges the ALJ erred by failing to provide clear and convincing reasons for finding Plaintiff is not fully credible.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient. *Id.*  The ALJ must identify "what

testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

At the March 2013 hearing Plaintiff testified her last day of employment was February 6, 2008, and she left because it was "increasingly difficult for [her] to sit or stand for long periods of time." Tr. 41. Plaintiff ultimately left her work when she was eight-months pregnant and experiencing medical complications. Tr. 41-42. Plaintiff testified she is a single mother of three children ages 12, 8, and 5. Tr. 41. Plaintiff stays home with her five year old. Plaintiff testified she went to two school events during the prior school year. Tr. 43. In a March 22, 2013, memorandum to the ALJ Plaintiff asserted her degenerative disc disease, headaches, and mental health all had become materially worse since the October 22, 2010, denial of her first SSI application.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of [Plaintiff's] alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible." Tr. 23. The ALJ noted the record does not indicate a significant worsening of Plaintiff's degenerative disc disease or fibromyalgia since the October 2010 decision. For example, a November 2008 MRI of Plaintiff's lumbar spine indicated Plaintiff had mild

degenerative disc disease from L3-4 through L5-S1 and mild
foraminal stenoses at L4-5.  Tr. 372.  A November 2008 MRI of
Plaintiff's cervical spine indicated early degeneration of the
C4-5 disc with mild disc space narrowing.  Tr. 375.  The record
does not contain another MRI of Plaintiff's lumbar spine, but a
November 2010 MRI indicated moderate stenosis at C4-5 and mild
stenosis at C5-6 and C6-7.  Tr. 753.  Nevertheless, at an October
2012 appointment with her treating physician, Melissa Jeffers,
M.D., Plaintiff had a full range of motion in her cervical,
thoracic, and lumbar spine.  Tr. 780.  In August 2011 Karen
Marto, F.N.P., noted Plaintiff's cervical spinal stenosis
remained unchanged.  Tr. 693.

With respect to headaches the ALJ noted Plaintiff has been
prescribed narcotic pain medication and received "trigger point"
injections every six months for her headaches.  On November 22,
2010, Plaintiff reported her headaches had improved with
medication.  Tr. 531.  Plaintiff expressed interest in getting
trigger point injections, which had helped her in the past.
Tr. 531.  In June 2012 Dr. Jeffers reported Plaintiff had done
"well with trigger point injections" and would like to continue
to receive them, which Dr. Jeffers approved.  Tr. 708.  The ALJ
noted Plaintiff began receiving trigger point injections every
six months after November 2010 and has maintained that schedule.
Plaintiff's treatment for headaches has not increased since she

began treating them with a regimen of soma, percocet, and trigger
point injections.

As to Plaintiff's depression and anxiety the ALJ noted
although the record reflects Plaintiff continues to have some
anxiety when leaving her home, in March 2012 Plaintiff reported
"things have been going pretty well," she has a positive outlook,
and "is in a new place [emotionally]." Tr. 602. In June 2012
Plaintiff reported she had reduced her anti-depressant medication
and wanted to stop taking it entirely. Tr. 707. Plaintiff
stated reducing her medication had "gone pretty well." Tr. 707.
Dr. Jeffers reported at the June 2012 appointment that Plaintiff
"has developed several excellent coping skills . . . and
supports. PHQ [Personal Health Questionnaire] actually improved.
I believe a trial off anti-depressant would be good and that she
has a strong chance of success without it." Tr. 708. In July
2012 Dr. Jeffers reported Plaintiff was "done with effexor."
Tr. 705. Although Plaintiff had an increase in pain with
withdrawal, her PHQ remained stable and Dr. Jeffers noted
Plaintiff had "[r]emarkably good emotional self care and
self-talk." Tr. 706. In October 2012 Dr. Jeffers reported
Plaintiff's pain was not under control, but she had been "warned
pain would spike" after she went off venalafaxine. Tr. 703.
Nevertheless, Dr. Jeffers also reported Plaintiff had "improved
community and personal engagement." Tr. 703. In February 2013

Plaintiff reported she was "feeling less anxious and has been challenging herself to continue to leave the house." Tr. 767. For example, Plaintiff reported she had signed up to be on the parent-review board for her son's lodge, "which is increasing her social interactions." Tr. 767. Finally, the ALJ noted Plaintiff's treatment providers have consistently assessed Plaintiff with GAF[2] scores from 55 to 63[3] during the relevant period. Tr. 424, 619, 621-28, 770.

The ALJ also noted Plaintiff's reported activities of daily living did not appear to be more limited at the time of the hearing than they were in October 2010. For example, in her prior application for disability Plaintiff reported she cared for her three children including taking care of two children at home

---

[2] Although the fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders* issued May 27, 2013, abandoned the GAF scale in favor of standardized assessments for symptom severity, diagnostic severity, and disability, at the time of Plaintiff's assessment and the ALJ's opinion the GAF scale was used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. *See Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).

[3] A GAF of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). A GAF of 61-70 indicates "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).

herself while her oldest child was in school.  Tr. 54.  Plaintiff
reported preparing three meals a day for her family, attending
school activities, performing household chores, visiting with
friends up to three times per week, and attending family
functions with her children.  Tr. 54.  In a February 2011 Adult
Function Report Plaintiff stated she cares for her three
children, washes their clothing, prepares food for them, and
helps them with school work.  Tr. 267.  Plaintiff reported she
grocery shops with her children 3-4 times per month and they help
her to carry items.  Tr. 269.  Plaintiff reported she goes to
bible study or has friends visit her house 1-2 times per week.
Tr. 270.  Plaintiff noted she regularly attends bible study, her
children's chess tournaments, and counseling.  Tr. 270.

On this record the Court finds the ALJ did not err when he
found Plaintiff was not fully credible because the ALJ provided
clear and convincing reasons supported by substantial evidence in
the record for doing so.

**II.    The ALJ did not err when he gave limited weight to various
treatment providers.**

Plaintiff contends the ALJ erred when he gave limited weight
to the opinions of Dr. Jeffers; Plaintiff's mental-health
counselor, Darcy Nyone; and Plaintiff's treating nurse
practitioner, Karen Morto, F.N.P.

Medical sources are divided into two categories:
"acceptable" and "not acceptable."  20 C.F.R. § 416.902.

Acceptable medical sources include licensed physicians and
psychologists. 20 C.F.R. § 416.902. An ALJ may reject treating
physician's opinion when it is inconsistent with the opinions of
other treating or examining physicians if the ALJ makes "findings
setting forth specific, legitimate reasons for doing so that are
based on substantial evidence in the record." *Thomas v.
Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v.
Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). When the medical
opinion of treating physician is uncontroverted, however, the ALJ
must give "clear and convincing reasons" for rejecting it.
*Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821,
830-32.

Medical sources classified as "not acceptable" include, but
are not limited to, nurse practitioners, therapists, licensed
clinical social workers, and chiropractors. SSR 06-03p, at *2.
The ALJ must explain the weight assigned to not acceptable
medical sources to the extent that a claimant or subsequent
reviewer may follow the ALJ's reasoning. SSR 06-03p, at *6.

### A. Dr. Jeffers

On January 25, 2012, Dr. Jeffers completed a Mental
Impairment Questionnaire in which she indicated Plaintiff would
have substantial difficulty with stamina, pain, and/or fatigue if
she was working full time at the light or sedentary levels.
Tr. 564. Dr. Jeffers opined Plaintiff's depression, anxiety,

PTSD, and sleep disorder would cause Plaintiff to be absent from work approximately three times per month.  Tr. 565.  Dr. Jeffers indicated Plaintiff was "slightly limited" in her ability to sustain an ordinary routine, to complete a normal workday and workweek "without interruption from psychologically based symptoms," and to "perform at a consistent pace without an unreasonable number and length of rest periods."  Tr. 566. Dr. Jeffers stated Plaintiff was moderately restricted in her activities of daily living; had moderate difficulties in maintaining social functioning; and had moderate deficiencies in concentration, persistence, or pace.  Tr. 567.  Dr. Jeffers indicated Plaintiff did not have any limitation in her ability to, among other things, understand, to remember, and to carry out short and simple instructions; to maintain "regular attendance and be punctual within customary, usually strict tolerances; and to sustain an ordinary routine without special supervision. Tr. 566.  Dr. Jeffers declined to assess Plaintiff with a either a current GAF or a GAF for the past year noting "defer to psych." Tr. 561.

The ALJ gave Dr. Jeffers's opinion that Plaintiff was not able to work at the sedentary or light exertion levels little weight on the ground that it is inconsistent with the medical record.  For example, the record indicates Plaintiff has only mild lumbar degenerative disc disease and mild to moderate

cervical disc disease.  Tr. 372, 528, 780.  The ALJ noted
Plaintiff's treatment providers have not recommended surgery for
her impairments, Plaintiff's treatment for her back pain and
headaches has remained consistent since November 2010, and
Plaintiff had decreased medications for her depression and
anxiety since November 2010.  Tr. 26.  In addition, the ALJ
pointed out that Plaintiff's health-care providers have
consistently assessed her with GAFs in a range that indicates
only mild to moderate limitations.

The ALJ also noted Plaintiff's reported activities of
daily living such as caring for her three children, preparing
meals, performing household chores, attending bible study,
attending school activities, and joining organizations such as
the parent-review board reflect Plaintiff does not have the level
of limitation indicated by Dr. Jeffers.

On this record the Court concludes the ALJ did not err
when he gave little weight to Dr. Jeffers's opinion that
Plaintiff was not able to work at the sedentary or light exertion
levels because the ALJ provided legally sufficient reasons
supported by substantial evidence in the record for doing so.

**B.    Darcy Nyone**

Plaintiff contends the ALJ erred when he gave limited
weight to the May 2011 opinion of Plaintiff's mental-health
counselor, Darcy Nyone.

On May 17, 2011, Nyone completed a Mental Impairment Questionnaire in which she noted she had treated Plaintiff for approximately five months and she did not have Plaintiff's medical history. Tr. 556. As a result, Nyone declined to answer a number of questions such as Plaintiff's ability to work eight hours a day in a forty hour work week at a "normal pace," how often Plaintiff would be absent from work due to her impairments, and Plaintiff's ability to do "work-related activities on a day-to-day basis in a regular work setting." Tr. 553-54. Nevertheless, Nyone opined Plaintiff had moderate restrictions in her activities of daily living and marked difficulty in maintaining social functioning. Tr. 556. Nyone assessed Plaintiff with a current GAF of 60 and a GAF of 60 in the past year. Tr. 550.

The ALJ gave Nyone's opinion regarding Plaintiff's activities of daily living and social functioning limited weight. The ALJ noted Plaintiff's activities of daily living and social functioning including caring for her three children, washing their clothing, preparing food, helping her children with school work, grocery shopping 3-4 times per month, going to bible study, joining the parent-review board, attending her children's events, attending counseling, and visiting with friends 1-2 times per week indicate Plaintiff does not have marked limitations in social functioning or moderate limitations in her activities of

daily living.

On this record the Court concludes the ALJ did not err when he gave little weight to Nyone's opinion that Plaintiff had moderate restrictions in her activities of daily living and marked difficulty in maintaining social functioning because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**C.    Karen Morto**

Plaintiff contends the ALJ erred when he gave little weight to the opinion of Plaintiff's treating nurse practitioner, Karen Morto, F.N.P., that Plaintiff is unable to work at the sedentary or light exertion level.

On February 21, 2012, Morto completed a Medical Opinion Questionnaire regarding Plaintiff's physical ability to do work-related activities in which she opined Plaintiff was able to stand and to walk less than two hours in an eight-hour work day, to sit less than two hours in an eight-hour work day, to sit and to stand no more than 30 minutes before changing position, to lift less than ten pounds occasionally, and to lift ten pounds rarely.  Tr. 573-74.  Morton indicated Plaintiff would "experience substantial difficulty with stamina, pain or fatigue if [she] was working full time, eight hours a day, at the light or sedentary levels."  Tr. 570.  Morton also opined Plaintiff would miss work more than four times per month due to her

impairments and/or treatment.   Tr. 575.

The ALJ gave limited weight to Morton's opinion that Plaintiff would be unable to work at the sedentary or light exertion level.   The ALJ noted the record indicates Plaintiff suffers only mild lumbar degenerative disc disease and mild to moderate cervical degenerative disc disease.   In addition, although Plaintiff reported numbness in her left arm, a June 2011 nerve conduction study was normal and did not show any evidence of radiculopathy, plexopathy, or entrapment neuropathy.   The ALJ also noted Plaintiff's activities of daily living suggest she is capable of performing sedentary or light work.

On this record the Court concludes the ALJ did not err when he gave little weight to Morto's opinion that Plaintiff is unable to work at the sedentary or light exertion level because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## III. The ALJ did not err when he partially rejected a lay-witness statement

Plaintiff contends the ALJ erred when he gave limited weight to the February 2011 Function Report provided by Plaintiff's friend Charlotte Ann Burton.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."   *Lewis v. Apfel*, 236 F.3d 503, 511

21 - OPINION AND ORDER

(9th Cir. 2001).  *See also Merrill ex rel. Merrill v. Apfel*, 224
F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a
claimant's disability, must give full consideration to the
testimony of friends and family members.").  The ALJ's reasons
for rejecting lay-witness testimony must also be "specific."
*Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

Burton reported Plaintiff has difficulty with physical
activities and using her left hand.  As a result Burton indicated
Plaintiff wears only sweatpants and pajamas, can feed herself but
"pukes up every other meal," and goes out "only for
appointment[s] or [to] school for kids meeting."  Tr. 275-76.
Burton indicated Plaintiff has some difficulty performing
activities of daily living such a preparing food and doing
housework and is assisted by her older children in doing tasks
such as laundry and shopping.  Burton indicated she spends "many
hours a week" with Plaintiff and Plaintiff also spends time with
others doing bible study, praying, and talking.  Tr. 278.  Burton
reported Plaintiff can walk for two blocks before needing to rest
and the amount of time Plaintiff needs to rest before she can
resume walking "depends on [her] pain level."  Tr. 279.

The ALJ gave limited weight to Burton's report on the
grounds that it is contradicted by the medical evidence and by
Plaintiff's activities of daily living.  Specifically, the ALJ
noted the record reflects Plaintiff suffers only mild lumbar

degenerative disc disease and mild to moderate cervical degenerative disc disease.  In addition Plaintiff's nerve conduction study was normal and did not show an evidence of radiculopathy, plexopathy, or entrapment neuropathy.  The ALJ also noted Plaintiff's activities of daily living suggest she is capable of performing sedentary or light work.

On this record the Court concludes the ALJ did not err when he gave limited weight to Burton's lay-witness statement because the ALJ gave reasons germane to Burton for doing so.

**IV.  The ALJ did not err in his assessment of Plaintiff's RFC.**

Plaintiff contends the ALJ erred in his assessment of Plaintiff's RFC because the ALJ failed to include all of Plaintiff's limitations set out in the opinions of Dr. Jeffers, Darcy Nyone, and Karen Morto.

Because the Court has found the ALJ properly gave little weight to portions of the opinions of Dr. Jeffers, Darcy Nyone, and Karen Morto, the Court concludes the ALJ did not err when he did not consider limitations based on the rejected portions of their opinions in his assessment of Plaintiff's RFC.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the

Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 7th day of August, 2015.

_____
ANNA J. BROWN
United States District Judge